. COURT
. OF MASS.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

2001 OCT -1  P 12: 46

| | |
|---|---|
| **TERRY ROY** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CITY OF GARDNER, CHARLES J.** )<br>**MANCA, individually and in his** )<br>**capacity as Mayor of the City of** )<br>**Gardner, JAMES DUFORT,** )<br>**individually and in his capacity as** )<br>**Chief of Police for the City of** )<br>**Gardner and ROGER WRIGLEY,** )<br>**Individually and in his official** )<br>**capacity as a Sergeant for the** )<br>**Gardner Police Department,** )<br>)<br>**Defendants,** )<br>) | **CIVIL ACTION NO. 01-40137NMG** |

FILED OFFICE

DOCKETED

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

I.    **INTRODUCTION**

The defendants, City of Gardner, (hereinafter "City"), its former mayor, Charles J.

Manca, ("Mayor"), its former Chief of Police, James Dufort, ("Chief Dufort") and

Sergeant Roger Wrigley, ("Sgt. Wrigley"), have moved this Court to order the dismissal

of the plaintiff's claims against them because the Complaint fails to state a claim for

which relief can be granted.  Fed.R.Civ.P. 12(b)(6).

The plaintiff's complaint asserts violations of his Federal Civil Rights actionable

pursuant to 42 U.S.C. § 1983, his State Civil Rights actionable pursuant to M.G.L. c. 12

§ 11H and I., as well as state torts of defamation of character, invasion of privacy,

intentional and negligent infliction of emotional distress , malicious prosecution, breach

of contract, interference with advantageous relations and breach of covenant of good

faith and fair dealing against all defendants. The Defendants now move for dismissal of

all claims against them.

## II.   STATEMENT OF RELEVANT ALLEGATIONS

The plaintiff's complaint does not contain a statement of facts but, merely asserts

various counts against the defendants. Generally, the plaintiff alleges that the

defendants violated his civil rights and committed various torts when he was terminated

from his position as a police officer for the City of Gardner following the Chief Dufort's

revocation of his firearms' license.

## III.   STATEMENT OF UNDISPUTED FACTS[1]

The plaintiff, Terry Roy, (hereinafter "Roy") was hired by the City of Gardner

Police Department in 1993. Prior to that date, Roy had possessed a license to carry a

firearm which was issued in 1990. In October 1997, Roy was the subject of an ongoing

investigation, and then police Chief Edward Cronin, placed Roy on administrative leave

and directed him to surrender his firearms. As a result of the investigation, Roy was

terminated from his position as a police officer. The termination was later reduced to a

---

[1] The above facts are gleaned from Judge Hillman's factual findings following his decision on the plaintiff's writ of certiorari under M.G.L. c. 249 § 4 for a review of a District Court decision affirming the revocation of his firearms's license. See Roy v. James Dufort, 1999 WL 1335160.

suspension. On December 28, 1998, when Roy's suspension as to be complete, newly appointed Police Chief James Dufort, sent Roy a letter revoking his license to carry, stating "your license to carry application was reviewed and it was determined that you submitted and singed an application which contained false answers in violation of G.L. c. 140 § 131. Furthermore, in light of recent information on record (arrest record, felony conviction) in the Gardner Police Department, I find that you are not a suitable person to be licensed to possess a firearm." Chief Dufort belief that Roy had provided false answers on the firearms application was based on the following facts. On the license application, Roy provided negative answers to questions about prior convictions, prior arrests, prior appearances in any court as a defendant, and prior use of drugs or narcotics. Chief Dufort had discovered however, that Roy's criminal records indicated that he had twice appeared before a juvenile court on delinquency complaints for a false alarm and larceny. In addition, while serving in the United States Army in 1990, Roy admitted to possession and use of cocaine. The firearms license was signed by Roy under the pains and penalties of perjury and acknowledged that failure to provide truthful answers to the questions would be just cause for denial or revocation of the license.

Roy was placed on paid Administrative Leave by Mayor Manca on February 25, 1999, pending the outcome of Roy's appeal of his firearms' license revocation to the District Court.

Following Chief Dufort's revocation of Roy's license to carry, an appeal hearing was held before the District Court as provided for under M.G.L. c. 140 § 131. The

-3-

District Court affirmed Chief Dufort's decision and Roy then appealed to the Superior

Court pursuant to M.G.L. c. 249 § 4. The Superior Court on December 1, 1999,

(Hillman, J) affirmed the District Court's ruling that Chief Dufort's revocation of Roy's

firearms' license was reasonable and supported by adequate facts.

On December 14, 1999, Mayor Charles Manca, pursuant to M.G.L. c. 31 § 41-

44, notified Roy that he was contemplating terminating Roy based on his inability to

possess a license to carry a firearm. A hearing was held pursuant to M.G.L. c. 31 §41-

44, on December 14, 1999. On December 22, 1999, Mayor Manca, as appointing

authority for the City of Gardner, notified Roy that he would be discharged and

terminated for just cause. Roy has since appealed the Mayor's decision to the

Massachusetts Civil Service Commission for review.

## IV.   ARGUMENT

### 1.   The Applicable Standard

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), courts are to

construe the Complaint in the light most favorable to the plaintiffs and the allegations

are to be taken as true. *Wright & Miller*, 5A Federal Practice and Procedure: Civil 2d §

1357. "Nevertheless, it is also well established that the pleading requirements are 'not

entirely......toothless.'" Fleming vs. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990),

citing, Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). For

example, legal conclusions or opinions couched as factual allegations are not given a

presumption of truthfulness. 2A Moore, Moore's Federal Practice ¶ 12.07 (2.-5).

Moreover, each general allegation must be supported by a specific factual basis.

-4-

Fleming, 922 F.2d at 23.  The necessary factual averments are required with respect to each material element of the underlying theory.  Id. at 24.

## 2.  Violations of 42 U.S.C. § 1983

### A.  42 U.S.C. § 1983 Generally

The proper cause of action for an alleged violation of constitutional rights is an action pursuant to 42 U.S.C. section 1983 or M.G.L. c. 12 §§ 11H or I.  In order to maintain a claim under Section 1983, the plaintiff's complaint must allege:  (1) that the conduct complained of was committed under color of state law; and (2) that such conduct subjected the plaintiff to the deprivation of rights secured by the federal constitution and laws.  See, e.g., Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920 (1980).

### B.  Due Process

Although the plaintiff has not used the words "procedural due process" in the complaint, his alleges that the City of Gardner violated his civil rights when they terminated him without justification.  That in essence, is procedural due process.

The Due Process Clause of the United States Constitution requires that, before an individual is deprived of a constitutionally protected property interest by government action, he must be given "notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Board of Education v. Loudermill, 105 S.Ct. 1487, 1493 (1985).  In general, due process property interest claims follow a three part analysis:

(1) Does the public employee possess a "property interest" in continued employment?

-5-

(2) If the answer to question 1 is "yes", has there been a deprivation of the employees' property interest effected by the state employer?

(3) If the answers to questions 1 and 2 are in the affirmative, was the deprivation made without due process of law?

Continuing the public employee analysis, the First Circuit as stated that "the extent to which a public employee has a constitutionally protected property interest in continued employment sufficient to invoke the due process clause, however, must be measured by, and decided with reference to, local law." Rosario-Torres v. Hernandez-Colon, 889 F.2d 314 (1st Cir. 1989).

In general, a constitutionally protected interest can be created by an employee's expectation in continued employment, but only if such expectation is reasonable. Beitzell v. Jeffery, 643 F.2d 870, 874 (1st Cir. 1981). In order to establish a procedural due process claim under Section 1983, a plaintiff must allege, first, that he has a property interest as defined by state law and second that the defendants, acting under color of state law, deprived him of that property interest without constitutionally adequate process. PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir. 1991).

When a complainant alleges violations of procedural due process and asserts that these violations are cognizable under section 1983, the existence of state remedies becomes highly relevant. Amsden v. Moran, 904 F. 2d 748 (1st Cir. 1990); Zinermon v Burch, 110 S. Ct. 975 (1990). A reviewing court must . . . examine "the procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort

-6-

law." <u>Zinermon</u> at 977.  The availability of judicial review is an especially salient

consideration in situations where permits and licenses have been denied or revoked by

state or local authorities in alleged derogation of procedural due process.  <u>Amsden</u> at

752.

Here, in the present case, the  plaintiff has not sufficiently pled that available

remedies under Massachusetts Law were inadequate to redress any deprivation of his

civil rights following his termination.  <u>See</u> <u>e.g.</u>,  <u>Rumford Pharmacy v. City of East</u>

<u>Providence</u>, 970 F.2d 996, 999 (1st Cir. 1992).  This omission alone warrants dismissal

of his procedural due process claim.  <u>Id</u>., citing <u>Zinermon</u>, 110 S.Ct. at 983; <u>Roy v. City</u>

<u>of Augusta, Me</u>, 712 F.2d 1517, 1522 (1st Cir. 1983); <u>Monahan v. Dorchester</u>

<u>Counseling Center Inc.</u>, 961 F.2d 987, 994 n.7 (1st Cir. 1992).

The Commonwealth of Massachusetts, in enacting M.G.L. c. 31 § 41-44 <u>et seq.</u>,

made constitutionally adequate remedies available to the plaintiff through an appeal of

his termination to the Massachusetts Civil Service Commission. (which he has done)

Roy has additional appellate rights available if the Massachusetts Civil Service

Commission upholds his termination.  He can appeal said decision to the

Massachusetts Superior Court with subsequent appellate rights to the Massachusetts

Court of Appeals and Supreme Judicial Court of Massachusetts.  A procedural due

process violation actionable under §1983 is not complete when the deprivation occurs;

it is not complete unless and until the state fails to provide due process.  <u>Zinermon</u>, 110

S.Ct. At 983.  The post-deprivation remedies afforded to the plaintiff by M.G.L. c. 31 §

41 <u>et seq.</u>, preclude his procedural due process claim under §1983.

## C.    Equal Protection

The Fourteenth Amendment mandates that no State "deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. Amend XIV..  In order to bring a successful equal protection claim, the plaintiff must show that, compared to similarly situated people, he was selectively treated, and that such treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish in the exercise of constitutional rights, or malicious or bad faith intent to injure the plaintiff. Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir. 1995).  The plaintiff has not alleged that he is a member of a protected class and there is no evidence to suggest selective treatment by the defendants or treatment based on impermissible considerations.  As a result, any equal protection claims must be dismissed.

Moreover, as in the case of any equal protection claims against the City, the plaintiff again must prove an "official, custom, practice or policy to violate his civil rights. Monell v. Department of Social Servs. of New York, 436 U.S. 658, 694 (1978).  The City cannot be held vicariously liable in an action under Section 1983 unless its official policy was the "moving force" behind the alleged violation of constitutional rights. Id..

## D.    § 1983 Claims Against the City of Gardner

In none of the counts of the plaintiff's Complaint is the City of Gardner alleged to have done anything which would give rise to liability under 42 U.S.C. Section 1983.

Initially, to prevail on a Section 1983 claim, "a plaintiff must show that he or she was deprived of a right, privilege or immunity secured by the Constitution or laws of the

-8-

United States by a person acting under color of state law". <u>Pittsley v. Warish</u>, 1927 F.

2d 3, 6 (1st Cir.), <u>cert denied</u>, 112 S. Ct. 226 (1991) (citations omitted).  A plaintiff may

not sue a local government or its officials under a theory of <u>respondeat superior</u>

pursuant to Section 1983.  <u>Board of the County Comm'rs of Bryant County v. Brown</u>,

117 S.Ct. 1382, 1388 (1997);  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 691

(1978).  Therefore, the plaintiff may not simply include the City as a defendant and

hope to impute the actions of individual defendant to it through <u>respondeat superior</u>.

Moreover, the civil rights violations asserted against the City do not establish an

unconstitutional custom, practice or policy as there is no evidence of a custom or policy

in effect promulgated by the City that violated the plaintiff's civil rights.

> "Proof of a single incident of unconstitutional activity is not sufficient to impose
> liability under <u>Monell</u>, unless proof of the incident includes proof that it was
> caused by an existing, unconstitutional municipal policy, which policy can be
> attributed to a municipal policy maker.  Otherwise, the existence of the
> unconstitutional policy, and its origin, must be separately proved." <u>City of
> Oklahoma City v. Tuttle</u>, 471 U.S. 808, 82-24 (Rehnquist, J., plurality opinion)
> (footnote omitted), <u>reh'g denied</u>, 473 U.S. 925 (1985).

Based on the above, the plaintiff's 42 U.S.C. § 1983 claims as against the City of

Gardner must be dismissed.

### E.    Qualified Immunity

Qualified immunity protects government officials, such as Mayor Manca, Chief

Dufort and Sergeant Wrigley, who wield discretionary powers "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known".  <u>Harlow v.

Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Thus, "[e]ven defendants who violate

-9-

constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard". <u>Davis v. Scherer</u>, 468 U.S. 183, 190 (1984). The plaintiff has failed to produce any evidence that the individual defendants acted unreasonably.

As the Court of Appeals for the First Circuit has stated, the "applicable standard" is an objective one and therefore:

> Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity. <u>Amsden v. Moran</u>, 904 F. 2d 748, 751 (1st Cir. 1990).

Issues of qualified immunity require the Court to address two questions. First, the Court must determine whether the right at issue was "clearly established". In this context, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 482 U.S. 635, 640 (1987). Next, the Court must "determine whether defendants reasonably should have comprehended that their specific actions transgressed those "clearly established" rights. <u>Amsden</u>, at 752.

Qualified immunity is a "necessary compromise" between the need to provide remedies to individuals whose constitutional rights have been violated and the necessity of protecting public officials from insubstantial lawsuits which may deter them from carrying out their official responsibilities. <u>Rodriques v. Furtado</u>, 410 Mass. 878, 883 (1991).

It is important that the issue of qualified immunity be decided as soon as possible in order to make the protection meaningful.  The Supreme Court has stated because the immunity is

> ...immunity from suit rather than a mere defense to liability ..., we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Hunter v. Bryant, 116 L. Ed 2d 589 (1991) (citations omitted).

In Hunter, the Court concluded that the question of immunity should be decided by the Court long before trial.  Also, the Court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed five years after the fact. For this reason, the individual defendants urge this Court to rule in their favor at this time as opposed to subjecting them to the burden and expense of further litigation.

### 3.   Violations of M.G.L. C. 11 §H and I

#### A.   MCRA Claims Against the Individual Defendants

The Plaintiff alleges that individual defendants, Manca, Dufort and Wrigley, deprived him of his rights under the constitution and laws of the United States and the Commonwealth of Massachusetts.  As the Court is aware, the Massachusetts Civil Right Act ("MCRA") creates no substantive civil rights; rather, it provides a mechanism for obtaining relief from the interference or attempted interference with rights conferred by Federal or Massachusetts Law.  See M.G.L. c. 12, Sections 11H and I; Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 593 (2001).

In addition, under M.G.L. C. 12, Section 11I, a Plaintiff is required to establish

-11-

that his exercise or enjoyment of rights secured by the United States and the

Commonwealth have been interfered with by "threats, coercion or intimidation".

Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996)(quoting M.G.L. c.

12 § 11I); Bally v. North Eastern University, 403 Mass. 713, 717 (1989); Freeman v.

Planning Board of West Bolyston, 419 Mass. 548 (1995) quoting Bally.  Courts have

recognized that the "legislature did not intend to create a vast constitutional tort and

thus explicitly limited the state Civil Rights Act's remedy to a situation where derogation

of secured rights occurs by threats, coercion or intimidation".  Bally v. North Eastern

University, 403 Mass. 713, 717 (1989); Bell v. Mazza, 394 Ma. 176, 182-183 (1985).

These terms have been applied according to their natural connotation, that of forcing

submission by conduct calculated to frighten, harass or humiliate.  Smith v.

Longmeadow, 29 Ma. App. Ct. 599, 603 (1990) citing Bell, Supra, at 183-184; Pheasant

Ridge Assoc. Ltd. Partnership v. Burlington, 399 Mass. 771, 781-782 (1987);  Deas v.

Dempsey, 403 Mass. 468, 470-471 (1988);  Bally, Supra, at 718-720.

In the present case, the Plaintiff has failed even to allege in his complaint that he

was threatened, coerced or intimidated by the individual defendants.

The first inquiry to determine a violation of the Massachusetts Civil Rights act is

whether the plaintiff has been deprived of a right secured by the Constitution of the

United States or the Commonwealth. Second, the complaint must allege specific facts

demonstrating that defendants used threats, intimidation or coercion to interfere with

that right.  Bally, Supra, at 717.  Interestingly enough, throughout the plaintiffs'

complaint, there are no references as to "threats, intimidation or coercion" committed by

-12-

the individual defendants to deprive the plaintiff of any constitutionally protected right.

As stated above, there is no evidence of any physical threats, intimidation or coercion by individual defendants to accomplish any such deprivation. The Supreme Judicial Court in <u>Bally</u>, said that a plaintiff suing under the same statute  had failed to offer adequate evidence to support a claim under the Civil Rights Act because he had not demonstrated that the defendants used <u>physical</u> threats intimidation or coercion to accomplish this deprivation.  <u>Bally</u> at 717.

The Supreme Judicial Court has repeatedly pronounced that a defendant can be held liable under the Civil Rights Act only in situations that "involve an actual or potential physical confrontation accompanied by a threat of harm." <u>Layne v. Superintendent, Mass. Correctional Inst.</u>, 406 Mass. 156, 546 N.E. 2d 166 (1989) See also <u>Wiletts v. Roman Catholic Archbishop</u>, 411 Mass. 202, 1991; <u>Longval v. Commissioner of Correction</u>, 404 Mass. 325, 535 N.E. 2d 588 (1988).

The SJC noted in <u>Bally</u> that almost all of the cases in which it had granted relief under the Civil Rights Act involved a physical confrontation accompanied by a threat of harm. <u>Bally</u> at 718.. The sole exception was in <u>Redgrave v. Boston Symphony Orchestra</u>, 399 Mass. 93, 502 N.E. 2d 1375 (1987) in which it held that the defendants cancellation of the plaintiff contract had the effect, intended or otherwise, desired or not, of coercing Redgrave not to exercise her First Amendment rights. <u>Redgrave v. Boston Symphony Orchestra</u>, 399 Mass. 93, 502 N.E. 2d 1375 (1987).

Even if one assumes for the sake of argument that the plaintiff need not show physical confrontations or threats of physical harm to establish a claim under the

Massachusetts Civil Rights Act, the fact remains that the plaintiff has failed to substantiate, any use of "threats, intimidation or coercion", by the individual defendants and therefore cannot satisfy an essential element of such a claim. Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451 (1993).

### B.    MCRA Claims Against the City

In a recent Massachusetts Appeals Court decision, the Court reaffirmed the long standing proposition that a municipality is not a "person" covered by the Massachusetts Civil Rights Act. See Howcroft v. City of Peabody, 51 Mass.App.Ct. 573 (2001). As such, the plaintiff's claims under the State Civil Rights Act as against the City of Gardner must be dismissed

### 4.    Constitutionality of M.G.L. 140 § 131

The crux of Roy's complaint concerning his allegations of civil rights violations under both Federal and State law, appear to be a challenge to the validity of the Massachusetts Gun Licensing Statute. (M.G.L. c. 140 § 131) Specifically, Roy requests that this Court declare that said statute violates the Constitution of the United States and Commonwealth of Massachusetts. As discussed below, Roy's constitutional claims on these grounds fails to state an actionable claim.

### A.    Federal Law

While the range of constitutionally protected liberty interests is broad, it does not include the right to carry a concealed weapon.

The statutory requirement that a licensing authority ascertain that the applicant for a weapons-carrying license is a "suitable person" to carry firearms and has a proper

-14-

purpose for doing so does not infringe on any protected property right or liberty interest. MacNutt v. Police Commissioner of Boston, 30 Mass. App. Ct. 632, 572 N. E. 2d 577 (1991); Commonwealth v. Davis, 369 Mass. 886, 343 N. E. 2d 847 (1976).

The United States Supreme Court has held:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U. S. 564, 92 S.Ct. 2701 (1972).

Particularly, with respect to firearms, many federal courts have consistently held that the Second Amendment does not establish an individual's right to gun possession. See, e.g., United States v. Wright, 117 F.3d 1265 (11th Cir.), cert. denied, 522 U.S. 1007 (1997)(Second Amendment limited to "possession or use of weapons that is reasonably related to a militia actively maintained and trained by the states); Hickman v. Block, 81 F.3d 98, 101 (9th Cir.), cert. denied, 519 U.S. 912 (1996)(Second Amendment "is a right held by the states and does not protect the possession of a weapon by a private citizen"); Thomas v. City Council of Portland, 730 F.2d 41, 42 (1st Cir. 1984)("Established case law makes clear that the Federal Constitution grants appellant no right to carry a concealed handgun").

The Ninth Circuit in Erdelyi v. O'Brien, 680 F.2d 61 (9th Cir. 1982) in a similar claim said, "Erdelyi does not, and could not, argue that she has an absolute liberty to carry a concealed weapon." Id at 63.  Further, in Conway v. King, 718 F. Supp. 1059 (D.N.H. 1989), the District Court added:

"If defendant's refusal to renew the license at issue here

-15-

> imposed on the plaintiff a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities, a protected liberty interest might be implicated. The plaintiff however alleges no such disability.  Accordingly, the non-renewal of Conway's license does not deprive him of a constitutionally protected liberty interest."

Conway v. King, 718 F. Supp. 1059 (D.N.H. 1989).

Other State Courts have echoed similar rulings with respect to firearms licenses.

In California, "the nature of a license to carry a concealed firearm... does not constitute

a significant property right". Rios v. Cozens, 7 Cal. 3d; 499 P.2d 979, vacated and

remanded, 410 U.S. 425 93 S.Ct. 1019 (1973).

Further, in Nichols v. County of Santa Clara, 273 Cal. Rptr. 84 (1990), The

California Supreme Court ruled that:

> "The privilege to carry a concealed weapon on the person is certainly not property in the ordinary sense. It is not monetary, such as welfare or social security benefits, it is not a government job, it is not a required license to practice a profession, occupation or a business.  The plaintiff has not shown that he cannot practice his business without the license. In fact, the plaintiff has shown no facts that he needs the weapon for anything.  Similar reported cases discuss the claim that automobile drivers' licenses are similar to concealed firearms licenses, and that the greater protection afforded to drivers' licenses should be given to gun licenses. This analogy, assuming the plaintiff will attempt to make it, should not be persuasive to the Court. Most persons' livelihoods depend on the use of automobiles. Drivers' licenses are issued under statutory standards which are specific and certain. Millions of people qualify for them and regard them as essential to the conduct of ordinary life. Licenses to carry a concealed firearm, however, are rarities. The statute leaves their issuance to the unfettered discretion of the local police chief, in the interests of controlling

-16-

dangerous weapons."

Nichols v. County of Santa Clara, 273 Cal. Rptr. 84 (1990).

More importantly, in a recent challenge to the validity of M.G.L. c. 140 § 131, the District Court (Lasker, J) dismissed a suit brought by a disgruntled firearms' license applicant challenging the constitutionality of M.G.L. c. 140 § 131. See Costerus v. Neal, 2001 WL 267456.   The plaintiff in Costerus sought a determination by the District Court that Massachusetts Law concerning the issuance of FID cards and licenses to carry violated the Second Amendment.  The Court dismissed the plaintiff's complaint reaffirming the long standing views regarding the application of the Second Amendment to individual's rights' to bear arms.

### B.    State Law

The goal of firearms control legislation is to "limit access to deadly weapons by irresponsible persons." Ruggerio v. Police Commr. of Boston, 18 Mass. App. Ct. 256, 258, 464 N.E. 2d 104 (1984).  Among the principal measures adopted in furtherance of that goal are the provisions of G.L. c. 140, sec. 129B and 131, governing the licensing of persons to carry firearms.  Id. at 259, 464 N.E. 2d 104.  These statutory requirements do not present any question of infringement of any protected property right or liberty interest. Commonwealth v. Davis, 369 Mass. 886, 888, 343 N.E. 2d 847 (1976).  Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 547, 4453 N.E. 2d 461 (1983). There is no right under the State Constitution for a private citizen to keep and bear arms and thus, to require that a citizen have a license to do so is not unconstitutional. See Davis and Moyer.

-17-

Moreover, the Supreme Judicial Court of Massachusetts in a recent opinion, rejected two claims by gun owners challenging the validity of the Massachusetts Gun licensure scheme.  In <u>Levine v. Chief Justice of the District Court</u>, SJC #08290, the Court dismissed claims made by two gun owners who sought to overturn G.L. ch. 140 sec. 129B and 131.  <u>Levine v. Chief Justice of the District Court</u>, SJC #08290.

Chief Dufort was the licensing authority under G.L. ch. 140 sec. 129B and 131, and specifically, is empowered to perform duties relating to licensure.  St. 19622, ch. 322, sec. 1 (7) and (13). He has been given "considerable latitude" in the performance of this task.  <u>Ruggerio</u>, <u>supra</u>, 18 Mass. App. Ct. at 259, 464 N.E. 2d 104.  In addition, M.G.L. c. 141 § 131 grants to him without guidelines, of the general power and responsibility of determining a person's suitability to carry firearms necessarily includes any incidental power reasonably related to effectuating the purposes of the granting statute. (firing tests, etc.)

Insomuch as Chief Dufort's decision has passed both District Court and Superior Court scrutiny, the plaintiff's claims challenging the validity of M.G.L. c. 140 § 131 must be dismissed.

5.     **<u>The Massachusetts Tort Claims Act Bars Intentional Torts Against the City of Gardner</u>**

Under the Massachusetts Tort Claims Act, G.L. c. 258 §10(c), municipalities are not liable for:

> "Any claim arising out of an intentional tort, including assault and battery, false imprisonment, false arrest, **intentional mental distress, malicious**

**prosecution, malicious abuse of process, libel, slander, misrepresentation,** deceit, **invasion of privacy, interference with advantageous relations or interference with contractual relations.**"
G.L. c. 258 §10(c) (emphasis added)

Public employers are immune from suits arising from intentional torts.  Mohr v.

Commonwealth, 421 Mass. 147 (1995); Molinaro v. Town of Northbridge, 419 Mass.

278 (1995); Armstrong v. Lamy, 928 F.Supp. 1018 (D.Mass. 1996); Melendez v. City of

Worcester, 870 F.Supp. 11 (D.Mass. 1994); Consolo v. George, 835 F.Supp. 49

(D.Mass. 1993).

Accordingly, any claims of intentional torts (defamation of character, invasion of

privacy, intentional infliction of emotional distress, malicious prosecution, abuse of

process, intentional interference with contractual relations or constructive wrongful

termination) by the plaintiff against the City must be dismissed.

6.     **Intentional Tort Claims Against the Individual Defendants**

A.     **Interference with Contractual Relations**

Generally, in order for the plaintiff to establish a prima facie case for interference

with contract or business relations with his employer by the individual defendants,

Dufort and Wrigley, the following four elements must be proved:

(1)     Existence of a valid contractual relationship between the plaintiff and a

third party or a valid business expectancy of the plaintiff;

(2)     Defendant's knowledge of the relationship or expectancy;

(3)     Intentional interference by defendant that **induces a breach or**

**termination** of the relationship or expectancy; and

(4)     Damage to the plaintiff.

Restatement of Torts (Second) § 767 (1979).

As part of the prima facie case, Massachusetts Courts require that the interference be improper in the motive of means.  G.S. Enterprises, Inc. v. Falmouth Marine Inc., 410 Mass. 262 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-817 (1990).

Arguably, in the present case the plaintiff had a valid business expectancy with the City of Gardner and Chief Dufort and Sgt. Wrigley were aware of its existence.  The plaintiff however, has no evidence nor is there a genuine issue of material fact that there was a intentional interference by Chief Dufort or Sgt. Wrigley that  **induced a breach or termination** of the plaintiff's contractual relationship with the City of Gardner or his expectancy therefrom.   Roy was terminated by the City of Gardner due to the fact that he no longer possessed a license to carry a firearm which is an essential part of his job as a police officer.  Said revocation was upheld by both the District Court and Superior Court.  Moreover, Roy has not exhausted his administrative remedies in appealing said dismissal to the Massachusetts Civil Service Commission.  Accordingly, the plaintiff has not stated a valid claim for intentional interference with contractual or business relations.

### B.     Defamation

The Supreme Judicial Court has stated that in defamation cases summary judgment is appropriate, indeed favored, even where actual malice raises a state of mind issue.  Elm Medical Laboratory, Inc. V. RKO General, Inc., 403 Mass. 779 (1989);

<u>King v. Globe Newspaper Co.</u>, 400 Mass. 705, 708 (1987), *cert. denied*, 485 U.S. 940 (1988).  On the issue of state of mind in a summary judgment motion, the courts must act with "great circumspection".  Nonetheless, '[t]here must be some indication that [the plaintiff] can produce the requisite quantum of evidence to enable [him] to reach the jury with [his] claim."  <u>A. John Cohen, Ins. Agency, Inc. v. Middlesex Ins. Co.</u>, 8 Mass. App.Ct. 178 (1979).

Specifically, with respect to police officers, the Supreme Judicial Court has stated that patrol officers are "public officials" and any claim for defamation must show actual malice to recover based on statements relating to his official conduct.  <u>Rotkiewicz v. Sadowsky</u>, 431 Mass. 748 (2000).  The SJC reasoned that "the abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot be constitutionally be inhibited by threat of prosecution under State libel laws."  <u>Rotkiewicz</u>, 431 Mass. at 753.

In the context of defamation, the term "actual malice" dos not mean the defendant's dislike of, hatred of, or ill will toward, the plaintiff.  <u>Id.</u>.  Rather, actual malice means defamatory falsehood was published with the knowledge that it was false or in reckless disregard of whether it was false.  <u>Id.</u>. quoting, <u>Stone v. Essex County Newspapers, Inc.</u>, 367 Mass. 849, 851 (1975).  The inquiry is a subjective one as to the defendant's attitude toward the truth or falsity of the statement rather than the defendant's attitude toward the plaintiff.  <u>Id.</u>.

Moreover, communications made by public officials within the scope of their

-21-

duties are privileged. <u>Mulgrew v. City of Taunton</u>, 410 Mass. 631 (1991); <u>Vigoda v. Barton</u>, 348 Mass. 478, 483-485 (1965). This includes communications received or made during proceedings of administrative offices. An ordinary administrative proceeding to revoke a license is within the privilege. <u>See</u> <u>Lininger v. Knight</u>, 226 P.2d 809 (1989). Officials sued for defamation based upon actions taken in the scope of their duties are protected from liability. <u>See</u> <u>Doe v. McMillian</u>, 412 U.S. 306 (1973); <u>Lepuki v. Van Wormer</u>, 587 F.Supp. 1390 (1984).

When a defendant's statements are privileged, a plaintiff cannot succeed in a defamation suit unless he or she establishes that the defendant knowingly or recklessly published the defamatory statement. <u>Mulgrew v. City of Taunton</u>, 410 Mass. 631 (1991); <u>Tosti v. Ayik</u>, 386 Mass. 721, 726 (1982); <u>Shore v. Retailers Commercial Agency, Inc.</u>, 342 Mass. 515, 520 (1961); <u>Landry v. Mier</u>, 921 F.Supp 880 (D.Mass 1996); <u>Lyons v. National Car Rental Systems, Inc.</u>, 30 F.3d 240 (1st Cir. Mass. 1994); <u>See</u> <u>also</u> Restatement (Second) of Torts § 600 (1977).

When such conditional privilege is found to exist, it is destroyed only if it is abused. On this issue, the burden is on the plaintiff. <u>Shore v. Retailers Commercial Agency, Inc.</u>, 342 Mass. 515, 520 (1961). "Whether the statements....were true or false is immaterial if there was no abuse of the privilege and there was no showing of actual malice." <u>Burns v. Barry</u>, 353 Mass. 115, 119 (1967).

In the present case, any alleged defamatory statements concerning Roy were made during the firearms licensing revocation process which included administrative hearings and District Court proceedings. Any statements made at these judicial

proceedings attributable to the defendants, Manca, Dufort or Wrigley, were made concerning Roy's suitability to carry a firearm. DeLuca v. Chief of Police of Newton, 415 Mass. 155 (1993); MacNutt v. Police Com'r of Boston, 30 Mass. App.Ct. 632 (1991) review denied 410 Mass. 1104 (1991). As the Court is aware,  the goal of firearms control legislation is to "limit access to deadly weapons by irresponsible persons." Ruggerio v. Police Commr. of Boston, 18 Mass. App. Ct. 256, 258, 464 N.E. 2d 104 (1984).  Any alleged defamatory statements attributable to the individual defendants were made within the scope of their official duties as licensing authority pursuant to M.G.L. c. 140 § 131.

Moreover, the plaintiff has not, with certainty, identified what defamatory words, statements or publications were attributed to the defendants.

The plaintiff has not, as is his burden, submitted any evidence that the individual defendants abused their conditional privilege.  Roy has submitted no evidence nor does the complaint contain allegations that the defendants knowingly or recklessly published any defamatory statements.   Accordingly, Mayor Manca, Chief Dufort and Sgt. Wrigley are immune from liability.


### C.     Malicious Prosecution/Abuse of Process

In order to prove a tort of malicious prosecution, the plaintiff must show: 1)  the institution of criminal process against him with malice; 2)  without probable cause; and 3)  the criminal proceeding terminated in favor of the plaintiff.  37 Nolan and Sartorio, Tort Law, Section 77; Wynne v. Rosen, 391 Mass. 797, 798 (1984); Cole v. Pulley, 18

Mass. App. Ct. 950, 951 (1984).

To proceed under a theory of abuse of process, a plaintiff must allege and prove (1) that the defendants used lawful process to accomplish an unlawful purpose, (2) with malice, (3) to his damage. Bednarz v. Bednarz, 27 Mass. App. Ct. 668 (1989).

In the present case, Roy has failed to sustain his burden that 1) there was an institution of criminal process against him. Nowhere in the plaintiff's complaint is it alleged that a criminal prosecution was commenced against him. As such, Roy has failed to satisfy the first element of the claim for malicious prosecution. Similarly, Roy has failed to allege sufficient facts to warrant a claim for abuse of process. There are no allegations or evidence that the defendants used lawful process to accomplish an unlawful purpose. Accordingly, Roy's abuse of process claims must be dismissed as well.

### D.    Invasion of Privacy

Pursuant to M.G.L. c. 214 § 1B, a claim for invasion of privacy must allege unreasonable, substantial, or serious interference with one's privacy. Pendleton v. City of Haverhill, 156 F.3d 57 (1998) citing; Canney v. City of Chelsea, 925 F.Supp. 58 (D.Mass. 1996); Ellis v. Safety Insurance Company, 41 Mass.App.Ct. 639, 637 (1996). Here in the present case, the plaintiff alleges that the individual defendants invaded his right to privacy by disseminating information regarding his work and employment history in connection with the revocation of his firearms license.   He has not identified the specific statements that supposedly intruded upon his privacy.   Even if such statements were identified, they would not constitute private information. See

-24-

generally, United States v. Dionisio, 410 U.S. 1, 14 (1973) (no expectation of privacy in one's appearance); Brown v. Hearst Corp., 862 F. Supp. 622, 631 (D.Mass. 1994) (explaining that there can be no expectation of privacy vis-a-vis information that has already filtered into public domain), aff'd, 54 F.3d 21 (1st Cir. 1995); Whirty v. Lynch, 27 Mass.App.Ct. 498 (1989) (sanctioning release of information pertaining to plaintiff's criminal background).

### E.    Intentional Infliction of Emotional Distress

The plaintiff's complaint alleges that the individual defendants  intentionally inflicted emotional distress upon him.  As discussed above, there can be no liability for intentional acts against the municipal defendant.  As to the individual defendants, the plaintiff has failed to set forth a prima facie case of intentional infliction of emotional distress.

In order to successfully state a claim for intentional infliction of emotional distress, when as here, no physical injuries are involved, the plaintiff must establish the following four elements:

1.    that the actor intended to inflict emotional distress or he knew or should have known that emotional distress was the likely result of his conduct;

2.    that the conduct was "extreme and outrageous" was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community";

3.    that the actions of the defendants were the cause of the plaintiffs' distress; and

4.    that the emotional distress sustained by the plaintiffs was "severe" and of a nature "that no reasonable man could be expected to endure it".

Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).

-25-

4.    that the emotional distress sustained by the plaintiffs was "severe" and of a nature "that no reasonable man could be expected to endure it".

Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).

Here, in the present case, as a matter of law, it cannot be said that Chief Dufort, Mayor Manca or Sgt. Wrigley's actions were "extreme and outrageous", "beyond all possible bounds of decency" or were "utterly intolerable in a civilized community". Chief Dufort and Mayor Manca were acting pursuant to statutory authority in terminating Roy. As such, any claims for intentional or negligent infliction of emotional distress must be dismissed.

## V.    **CONCLUSION**

Based on the above arguments, the defendants respectfully request that this Court dismiss all of the plaintiff's claims against them.

Date: 9-28-01

The defendants, City of Gardner, Charles J. Manca, James E. Dufort and Roger Wrigley, By their attorneys,

Douglas I. Louison BBO#545191
James W. Simpson, Jr. BBO#634344
MERRICK, LOUISON & COSTELLO
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

## CERTIFICATE OF SERVICE

I, James W. Simpson, Jr., hereby certify that on the 28th day of September, 2001, I served the foregoing by causing a copy to be mailed, postage prepaid, directed to Michael R. Halpin, Esq., 70 Elm Street, Worcester, MA 01609 (NAGE/IBPO).

James W. Simpson, Jr.

## CERTIFICATION PURSUANT TO L.R. 7.1 (A)(2)

The undersigned certifies that he has conferred with plaintiff's counsel and attempted in good faith to resolve or narrow the issues presented in this motion.

_____
James W. Simpson, Jr.